IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MONICA L. SIMPSON,

        Plaintiff,

vs.                                    Case No. 12-1077-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

        Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

1

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

     The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or

2

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On July 22, 2011, administrative law judge (ALJ) Michael R. Dayton issued his decision (R. at 9-20). Plaintiff alleges that she has been disabled since December 31, 2006 (R. at 9). Plaintiff is insured for disability insurance benefits through

March 31, 2008 (R. at 11).  At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since plaintiff's alleged onset date (R. at 11).  At step two, the ALJ found that plaintiff had the following severe impairments:  mild degenerative changes of the lumbar spine, obesity, chronic bronchitis, left heel spur, history of right ankle fracture, major depression and personality disorder not otherwise specified (R. at 11).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 12).  After determining plaintiff's RFC (R. at 14), the ALJ determined at step four that plaintiff is able to perform past relevant work as a food clerk, bakery (R. at 18).  In the alternative, at step five, the ALJ determined that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 19-20).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 20).

**III.  Did the ALJ err in his consideration of the medical source evidence regarding plaintiff's mental impairments when assessing plaintiff's RFC?**

On March 22, 2010, Dr. Martha Wike, a licensed psychologist, prepared a psychological evaluation on the plaintiff.  Her medical source opinions were as follows:

> A) The claimant's ability to understand and remember instructions is probably mildly to

>     moderately impaired as a result of
>     depression.
>
>     B) The claimant's ability to sustain
>     attention and concentration is moderately
>     impaired as a result of depression.
>
>     C) The claimant's ability to interact with
>     other people is moderately to markedly
>     impaired as a result of depression and her
>     personality disorder.
>
>     D) The claimant's ability to adapt to
>     changes in her routine or work-like settings
>     is probably moderately impaired as a result
>     of depression and probably borderline
>     intellectual functioning.

(R. at 586-590). The ALJ gave significant weight to the opinions of Dr. Wike, except for giving only some weight to her opinion that plaintiff's ability to interact with other people was moderately to markedly impaired (R. at 17).

On April 5, 2000, Dr. Phay prepared a state agency mental RFC assessment. Dr. Phay opined that plaintiff was moderately limited in the following categories:

>     The ability to maintain attention and
>     concentration for extended periods.
>
>     The ability to perform activities within a
>     schedule, maintain regular attendance, and
>     be punctual within customary tolerances.
>
>     The ability to complete a normal workday and
>     workweek without interruptions from
>     psychologically based symptoms and to
>     perform at a consistent pace without an
>     unreasonable number and length of rest
>     periods.

>   The ability to interact appropriately with the general public.
>
>   The ability to accept instructions and respond appropriately to criticism from supervisors.
>
>   The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.
>
>   The ability to respond appropriately to changes in the work setting.

(R. at 606-608). The ALJ indicated that he gave "significant weight" to this opinion (R. at 18).

The ALJ's mental RFC findings were as follows:

>   The claimant is able to perform simple and some detailed tasks, maintain concentration to complete simple and some detailed tasks and perform activities within a normal workweek. The claimant also has the ability to interact with general public, supervisors and peers in the work place but this is limited to no more than frequently. The claimant could appropriately respond to infrequent changes and hazards in the workplace.

(R. at 14). The ALJ explained his findings as follows:

>   Thus, due to the claimant's depression and personality disorder, it is reasonable to conclude that she is able to perform simple and some detailed tasks, maintain concentration to complete simple and some detailed tasks and perform activities within a normal workweek. The claimant also has the ability to interact with general public, supervisors and peers in the work place but this is limited to no more than frequently. The claimant could appropriately respond to infrequent changes and hazards in the workplace.

(R. at 17).

Plaintiff argues that the ALJ did not explain how moderate limitations in various categories permitted plaintiff to perform even simple tasks in a competitive job on a full-time basis, and further argues that a limitation to simple work would not accommodate various moderate limitations (Doc. 18 at 6-7; Doc. 20 at 6-7). In the case of Newton v. Chater, 92 F.3d 688, 695 (8th Cir. 1996), the factual situation was as follows:

> There is no dispute in the medical evidence that Newton suffers from deficiencies of concentration, persistence, or pace, or that these were not mentioned in the hypothetical question. Dr. Scott found that Newton had moderate deficiencies in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal work week, and perform at a consistent pace without an unreasonable number and length of rest periods. Dr. McDonough found that Newton was markedly limited in his ability to carry out detailed instructions and moderately limited in his ability to maintain attention and concentration for extended periods. Consistent with these findings, the ALJ stated on the Psychiatric Review Technique Form attached to the decision that Newton "often" has deficiencies of concentration, persistence, or pace (emphasis added).

The court held that since these deficiencies were not included in the hypothetical question to the vocational expert, the expert did not base his opinion on the full extent of the

claimant's limitations, and his testimony could not have constituted substantial evidence to support the Commissioner's decision. Id.  The court went on to state the following:

> The Commissioner contends that these deficiencies did not have to be included in the hypothetical question because the question limited Newton's capabilities to simple jobs. She notes that Drs. Scott and McDonough concluded that Newton's concentration problems did not significantly limit his abilities to follow short and simple instructions and make simple work-related decisions, and that Dr. Domingo determined Newton could maintain concentration for simple work.
>
> The vocational expert stated on cross-examination, however, that Newton's concentration and persistence problems related to basic work habits needed to maintain employment. A moderate deficiency in these areas, the expert testified, would cause problems on an ongoing daily basis, "regardless of ... what the job required from a physical or skill standpoint." The expert's original response to the hypothetical question may thus have been different if the question had already described all of Newton's functional limitations. See Smith, 31 F.3d at 717. Any hypothetical question on remand should include Newton's deficiencies of concentration, persistence, or pace so that the vocational expert might accurately determine his ability to work.

Newton, 92 F.3d at 695.

In the case before the court, the vocational expert (VE) testified that the moderate limitations included in the mental assessment by Dr. Phay could, depending on the definition of

9

moderately limited, preclude all work (R. at 61-62). Therefore, as in Newton, the ALJ erred by not including in his RFC findings all of the moderate limitations set forth by Dr. Phay and Dr. Wike; a limitation to simple and some detailed tasks does not sufficiently incorporate those moderate limitations. This case shall therefore be remanded in order for plaintiff's RFC to either include the specific moderate limitations included in the reports of these two medical sources, or provide a legally sufficient explanation for not including those limitations, and determine the impact of those moderate limitations on plaintiff's ability to work.

**IV. Did the ALJ err at step two in finding that plaintiff's sciatica was not medically determinable?**

At step two, the ALJ found that sciatica was not a medically determinable impairment, noting that there was no evidence from an acceptable medical source to establish the existence of sciatica as an impairment; the ALJ further noted that a physical examination on January 19, 2010 showed chronic back pain without radiculitis, which contradicts a finding of sciatica. The ALJ also noted that there are no nerve conduction studies or imaging studies in the file to confirm this diagnosis (R. at 12).

An impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically

10

acceptable clinical and laboratory diagnostic techniques," and "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [plaintiff's] statement of symptoms.  20 C.F.R. §§ 404.1508, 416.908. Evidence to establish a medically determinable impairment must come from "acceptable medical sources."  20 C.F.R. §§ 404.1513(a), 416.913(a).

Medical records indicate that plaintiff was diagnosed with sciatica on numerous occasions (R. at 362, 365, 374, 400, 474-476, 542, 625).  Therefore, on remand, the ALJ shall evaluate these and other medical records, make a determination whether these records establish a medically determinable impairment, and if so, determine its impact, if any, on plaintiff's ability to work.

**V.   Did the ALJ err in evaluating plaintiff's credibility?**

Plaintiff also asserts error by the ALJ in his credibility findings.  The court will not discuss this issue in detail because it may be affected by the ALJ's resolution of the case on remand after giving further consideration to the medical source opinion evidence regarding plaintiff's mental impairments and limitations, as set forth above.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).  However, the court will briefly address one issue raised by plaintiff in her brief.

11

In his decision, the ALJ stated that plaintiff has not received the type of medical treatment one would expect for an individual with disabling pain (R. at 16). In the case of Morgan v. Astrue, Case No. 08-1392-JTM (April 29, 2010; Doc. 16 at 16-17), the court faced the same issue as is before the court in this case. The court held:

> **...the ALJ also relied on the fact that plaintiff had not had surgery or inpatient hospitalization, and had not been referred to physical therapy**, when considering the medical evidence relating to plaintiff's RFC, including the opinions of Dr. Gillenwater (R. at 26; Doc. 13 at 7). **However, the ALJ did not cite to any evidence regarding the relevance or significance, if any, of the fact that plaintiff had not had surgery, inpatient hospitalization, or physical therapy**. In the case of Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir. 2004), the ALJ noted that the claimant did not require an assistive device for his neck. The court held that there is no evidence that any physician recommended such a device or suggested that one would have provided any pain relief. The court stated that an ALJ is not free to substitute his own medical opinion for that of a disability claimant's treating doctors. As noted above, the ALJ's duty is to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment. Bolan [v. Barnhart], 212 F. Supp.2d [1248, 1262 (D. Kan. 2002)].
> **In the absence of any medical evidence indicating the relevance or significance of the fact that plaintiff did not receive certain treatments, the ALJ is in no position to render a medical judgment regarding the relevance or significance of the fact that plaintiff did not receive**

12

> **certain treatments**.  Park v. Astrue, Case No. 07-1382-MLB, 2008 WL 4186871 at *5 (D. Kan. Sept. 9, 2008, Doc. 17 at 11-12); see Newman v. Astrue, Case No. 08-1391-JTM (D. Kan. Feb. 2, 2010; Doc. 18 at 10-12)(**ALJ erred by failing to cite to any medical evidence to support his assertion that plaintiff had not received the type of treatment one would expect for a totally disabled individual**); Burton v. Barnhart, Case No. 06-1051-JTM (D. Kan. Nov. 1, 2006; Doc. 12 at 15)(ALJ erred by relying on the lack of certain types of treatment in the absence of any evidence that such treatment was recommended, would have lessened the claimant's limitations, or provided pain relief); Mazza v. Barnhart, Case No. 06-1018-JTM (D. Kan. Oct. 25, 2006; Doc. 13 at 20)(same).  For this reason, **the ALJ erred by relying on the absence of surgery, hospitalization, or physical therapy without any medical evidence regarding the relevance or significance of the lack of such treatment**.

(emphasis added); quoted with approval in Eckert v. Astrue, Case No. 12-2142-SAC (D. Kan. Feb. 7, 2013; Doc. 16 at 9-11)(ALJ had asserted that plaintiff not received the type of treatment one would expect for a totally disabled individual); Dannels v. Astrue, Case No. 10-1416-SAC (D. Kan. Dec. 20, 2011; Doc. 19 at 9-11)(wherein the ALJ had stated that the claimant had not generally received the type of medical treatment one would expect for a totally disabled individual).

   As in the above cases, the ALJ asserted that the plaintiff had not received the type of medical treatment one would expect for a person with disabling pain.  However, the ALJ cited to no

evidence or medical authority in support of these assertions, and did not cite to any statute, regulation or ruling in support of these assertions.  For the reasons set forth above, the ALJ clearly erred by relying on relying on this unsupported assertion as a basis for discounting plaintiff's credibility.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 13th day of March, 2013, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge